**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5451-17T3

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

JAMES K. FORD, a/k/a
JAMES SMITH, JHOOD J,
and JHOOD JHOOD,

      Defendant-Appellant.

_____

Submitted December 10, 2019 – Decided January 10, 2020

Before Judges Yannotti and Hoffman.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment Nos. 11-05-0258 and 12-10-0740.

Joseph E. Krakora, Public Defender, attorney for appellant (Mark Zavotsky, Designated Counsel, on the brief).

Michael H. Robertson, Somerset County Prosecutor, attorney for respondent (Paul Henry Heinzel, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant James K. Ford appeals from an order entered by the Law Division on June 20, 2018, which denied his petition for post-conviction relief (PCR). We affirm.

I.

In May 2011, a Somerset County grand jury returned Indictment No. 11-05-0258 charging defendant and his brother Elijah Ford with the first-degree murder of Damian Williams, N.J.S.A. 2C:11-3(a) (count one); first-degree conspiracy to murder Williams, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3(a) (count two); second-degree aggravated assault upon K.H., N.J.S.A. 2C:12-1(b)(1) (count three); and second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count four).[1] In addition, in October 2012, a Somerset County grand jury returned Indictment No. 12-10-0740, which charged defendant with aggravated assault upon J.F., N.J.S.A. 2C:12-1(b)(7).

In February 2012, defendant filed a motion to remove K.E. as his trial attorney and sought permission to represent himself. The trial court granted

---

[1] We use initials to identify K.H. and certain other individuals involved in this matter.

A-5451-17T3

defendant's motion and thereafter, K.E. served as standby counsel. In January 2013, M.I. replaced K.E. as standby counsel.

On April 2, 2013, defendant informed the trial judge that he no longer wanted to represent himself, and he asked the judge to permit M.I. to represent him at the trial. M.I. expressed reservations about his ability to try the matter; however, the judge stated that the trial would proceed as scheduled. The following day, jury selection commenced for the trial on the charges in Indictment No. 11-05-0258.

During the trial, the State presented evidence showing that on March 19, 2011, certain members of the Bloods street gang held a meeting behind the train station in Bound Brook. Defendant and his brother Elijah attended the meeting. Williams, B.H., J.G., K.H., and L.M. also were present. It appears that, at the time, Williams was a high-ranking member of the Bloods gang.

An argument broke out between defendant and Williams. Defendant and Elijah took out handguns. Defendant shot and killed Williams. The State maintained that defendant fired once, paused, and then fired two additional shots. At about the same time, K.H. was shot in the stomach. After the shootings, defendant and Elijah discarded the weapons and fled the area.

3

Officers from the Bound Brook Police Department (BBPD) responded to the scene and found K.H. lying on the ground. Police officers from surrounding communities arrived to assist the Bound Book police. An officer from Bridgewater Township came upon two individuals who discovered Williams's body. The officer confirmed that Williams was dead.

A detective from the Somerset County Prosecutor's Office (SCPO) arrived at the scene and found three spent shell casings and two unspent .380 caliber rounds. He also recovered a spent projectile in the dirt about thirty-five to forty feet from Williams's body. Later, a detective returned to the train station and found an additional spent projectile in the dirt where Williams's body was found. No guns or other weapons were located.

On March 20, 2011, Dr. Mirfrida Geller performed an autopsy on Williams's body. She determined that Williams had been shot three times and one bullet remained inside the body. Dr. Geller opined that the projectiles had entered Williams's body from three different angles; one through the shoulder, another through the chest, and one through the right hip and buttocks. Dr. Geller found that the cause of Williams's death was multiple gunshot wounds.

On March 22, 2011, an officer from the BBPD interviewed B.H. and thereafter responded with detectives from the SCPO to the rear of a building in

Bound Brook. They found three weapons: a Bersa .380 caliber semi-automatic handgun, a Hi-Point 9-millimeter semi-automatic handgun, and a Davis Industries' .380 caliber semi-automatic handgun.

Thereafter, one of the detectives determined that an unfired round found on the ground at the train station came from the Bersa handgun, and another unfired round came from the Davis Industries' weapon. The detective also determined that the projectiles recovered from the ground and Williams's body were fired from a 9-millimeter handgun, and the spent 9-millimeter shell casings were fired from the Hi-Point weapon.

On March 23, 2011, one of the detectives presented two photo arrays to B.H. After reviewing the first array, B.H. identified Elijah's photo. He said Elijah had been in possession of two pistols at the time of the shooting, and Elijah shot K.H. After B.H. reviewed the second array, he identified defendant's photo and said defendant shot Williams.

On April 11, 2011, officers from the BBPD and detectives from the SCPO arrested defendant. He was informed of and waived his Miranda[2] rights. Defendant then admitted he shot and killed Williams. He claimed, however, that he shot Williams in self-defense.

_____

[2] Miranda v. Arizona, 384 U.S. 436 (1966)

5

The jury found defendant guilty on counts one (murder) and four (unlawful possession of a weapon), but not guilty on counts two (conspiracy to commit murder) and three (aggravated assault). Defendant later pled guilty to the aggravated assault upon J.F., as charged in Indictment No. 12-10-0740.

In July 2013, defendant was sentenced. On count one of Indictment No. 11-05-0258, the judge sentenced defendant to a thirty-year prison term, during which defendant would not be eligible for parole. On count four, the judge sentenced defendant to ten years in prison. The judge ordered that defendant would serve this sentence concurrently to the sentence imposed on count one.

For the aggravated assault charged in Indictment No. 12-10-0740, the judge sentenced defendant to a five-year prison term. The judge ordered that defendant would serve this sentence concurrently to the sentences imposed under Indictment No. 11-05-0258. The judge also imposed various fines and fees. Defendant appealed and argued:

> POINT I:
> THE JUDGE'S INCONSISTENT AND CONFUSING INSTRUCTIONS AND VERDICT SHEET IMPROPERLY PREVENTED THE JURORS FROM CONSIDERING PASSION/PROVOCATION MANSLAUGHTER UNLESS THEY HAD FIRST ACQUITTED DEFENDANT OF MURDER, IN VIOLATION OF HIS RIGHT TO DUE PROCESS OF

6

LAW AND A FAIR TRIAL. U.S. CONST. AMEND. XIV; N.J. CONST. (1947) ART. I, PARS. 1, 9, 10. (Not Raised Below).

POINT II:
THE STATE COMMITTED PROSECUTORIAL MISCONDUCT BY MISSTATING THE LAW ON, AND UNFAIRLY CHARACTERIZING THE EVIDENCE RELEVANT TO, THE DUTY TO RETREAT. U.S. CONST. AMEND. XIV; N.J. CONST. (1947) ART. I, PARS. 1, 9, 10. (Partially Raised Below).

POINT III:
THE COURT ABUSED ITS DISCRETION IN RULING THAT DEFENDANT COULD NOT ELICIT EVIDENCE THAT THE VICTIM WAS A CONFIDENTIAL INFORMANT AS BEARING ON THE REASONABLENESS OF DEFENDANT'S BELIEF THAT DEADLY FORCE WAS NECESSARY BECAUSE THE VICTIM BELIEVED THAT HE COULD ACT VIOLENTLY WITH IMPUNITY BY VIRTUE OF THAT STATUS.

POINT IV:
A REMAND IS NECESSARY BECAUSE THE COURT ERRONEOUSLY APPLIED PRE-HENDERSON LAW IN ASSESSING ADMISSIBILITY OF THE IDENTIFICATIONS.

In addition, defendant filed a pro se supplemental brief, in which he argued:

THE STATE FAILED TO DISCLOSE EVIDENCE[] THAT WAS VITAL TO THE DEFENSE[] AND WITHHELD THIS DISCOVERY NOT ONLY FROM THE DEFENDANT, BUT ALSO THE TRIAL JURY,

7

[] WHICH PRODUE[D] AN UNJUST CONVICTION. [BRADY v. MARYLAND], 373 U.S. 83, 88 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

We affirmed defendant's convictions. State v. Ford, No. A-6175-12 (App. Div. Oct. 1, 2015). The Supreme Court later denied defendant's petition for certification. State v. Ford, 224 N.J. 244 (2016).

On March 9, 2016, defendant filed a pro se petition for PCR in which he claimed he had been denied the effective assistance of both trial and appellate counsel. The court appointed counsel for defendant, and PCR counsel filed a brief in support of defendant's petition.

On June 20, 2018, the PCR court denied relief, concluding that defendant failed to establish a prima facie case of ineffective assistance of trial or appellate counsel. Defendant appeals and argues:

> POINT I
> DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL ENTITLING HIM TO POST CONVICTION RELIEF OR AN EVIDENTIARY HEARING ON THE ISSUES OF FAILURE OF COUNSEL TO REQUEST AN ADJOURNMENT TO ADEQUATELY PREPARE, FAILURE TO RETAIN AN EXPERT TO REFUTE THE STATE'S THEORY OF THE CASE, AND FAILURE TO INTERVIEW WITNESSES AVAILABLE TO SUPPORT DEFENDANT'S SELF-DEFENSE CLAIM.
>
> POINT II

8

DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL ENTITLING HIM TO POST CONVICTION RELIEF OR AN EVIDENTIARY HEARING ON THE ISSUES OF FAILURE OF COUNSEL TO ARGUE ADMISSION OF PRIOR WITNESS STATEMENTS IN EVIDENCE AS PREJUDICIAL, AND FAILURE TO CHALLENGE THE DECISION OF THE TRIAL COURT TO ALLOW DEFENDANT TO PROCEED PRO SE.

## II.

We note initially that to prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-part test established in Strickland v. Washington, 466 U.S. 668, 693 (1984), and later adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). Under the test, a defendant first "must show that counsel's performance was deficient." Strickland, 466 U.S. at 693. Defendant must show that counsel's performance "fell below an objective standard of reasonableness" and "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid.

Defendant also must establish "the deficient performance prejudiced the defense." Ibid. To establish prejudice, the defendant must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

9

probability sufficient to undermine confidence in the outcome" of the matter. Id. at 698.

Furthermore, an evidentiary hearing is required on a PCR petition only if the defendant presents a prima facie case in support of relief, the court determines that there are material issues of fact that cannot be resolved based on the existing record, and the court finds that an evidentiary hearing is required to resolve the claims presented. State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)). "To establish a prima facie case, defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." R. 3:22-10(b).

## III.

As noted, defendant argues he was denied the effective assistance of trial counsel because his attorney failed to: (1) seek an adjournment of the trial so that he could prepare adequately; (2) retain experts to refute the State's contention that he did not act in self-defense when he shot Williams; and (3) investigate witnesses who would have supported his claim of self-defense. We address each argument in turn.

A. Adjournment.

As noted, in February 2012, the trial court granted defendant's motion and allowed him to represent himself at trial. Initially, K.E. acted as standby counsel and thereafter M.I. assisted defendant in that capacity. On April 2, 2013, the day before jury selection was to begin, defendant asked the court to permit M.I. to take over his defense and try the case.

In a colloquy with the judge, M.I. stated that he might not be prepared to proceed with the trial as scheduled. He indicated he would need to have further discussions with defendant to ensure that "all necessary witnesses" had been investigated.

The judge told M.I. he would have the opportunity to address the issue later that day. After a lunch break, M.I. informed the judge that he had reviewed the potential witnesses in greater detail, to ensure the witness list was correct.

The PCR court found that it appeared counsel's initial concerns about his ability to try the case had been addressed, and counsel did not thereafter raise his concern when the judge determined he could serve as defendant's trial counsel. The PCR court found it was clear from the record that counsel was amply prepared. The court noted that counsel had been able to question all witnesses vigorously and provide a clear theory of self-defense throughout the trial.

11

The PCR court found that defendant presented no evidence showing that if his trial counsel had made a motion to adjourn the trial, the judge would have granted the motion, or that denial of an adjournment would have been "a manifest wrong." The PCR court also found that defendant failed to show he was prejudiced by counsel's failure to seek the adjournment. There is sufficient evidence in the record to support the PCR court's findings.

B. Witnesses.

Defendant contends his trial attorney was ineffective because he failed to retain experts to refute the State's claim that he did not act in self-defense when he shot Williams. He asserts his trial attorney should have called a forensic pathologist to refute the medical examiner's testimony that Williams was running away from defendant when defendant shot him.

Defendant also contends his trial attorney should have retained a ballistics expert to establish the distance and trajectory of the bullets and Williams's position relative to defendant. He further argues that his attorney should have retained an expert on street gangs to establish that he had a reasonable belief he was in fear for his life when he shot Williams.

The PCR court rejected these claims. The court noted that defendant had not identified these potential witnesses, nor submitted certifications from them

detailing the testimony they would have provided. The PCR court commented that defendant's claim that these unnamed witnesses would have provided testimony capable of affecting the outcome of the trial was speculation.

The PCR court noted that purely speculative deficiencies in legal representation are insufficient to warrant relief. See Fritz, 105 N.J. 42 at 64-65. The PCR court correctly found that defendant's claim regarding the unnamed expert witnesses failed for lack of proof. A claim of ineffective assistance of counsel cannot rest on bald assertions. See State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

Defendant also argues that his trial attorney was deficient because he did not call Williams's brother K.W., and a person named "Corey," who Williams claimed was his cousin. Defendant asserts that K.W. would have testified that Williams was a high-ranking member of the Bloods, and that this testimony would have supported his claim that he had a reasonable fear for his life when he shot Williams. He also claims the person named "Corey" would have testified that Williams met defendant for the purpose of settling their dispute with physical violence.

The PCR court found that this claim failed because defendant had not made the required preliminary showing that he was prejudiced by counsel's

failure to call these two witnesses. The court noted that defendant had not presented any evidence establishing what K.W. or "Corey" would have stated at trial, if they had been called as witnesses.

The PCR court pointed out that a report of an investigating officer states that K.W. indicated Williams was a high-ranking member of the Bloods, and that "Corey" was aware Williams had been traveling to Plainfield for a prearranged fight to settle differences. The court observed, however, that there was no evidence that either witness would have testified consistently with their earlier statements. The record supports the PCR court's findings.

We therefore conclude that the PCR court correctly determined that defendant had not presented a prima facie case of ineffective assistance of trial counsel based on his attorney's failure to call expert and fact witnesses to support his claim of self-defense. Furthermore, defendant failed to show that his attorney was deficient, or that his attorney's action in failing to call these witnesses prejudiced his defense.

## IV.

We next consider defendant's contention that he was denied the effective assistance of appellate counsel because counsel failed to argue on appeal that: (1) the admission of certain prior witness statements was prejudicial; and (2) the

14

trial judge erred by allowing defendant to represent himself for a time in the period leading up to the scheduled trial date.

    A.  Admission of Prior Statements of Witnesses.

        1.  B.H.'s Statement.

After the shooting, B.H. met with police officers.  B.H. told the officers he was present at the meeting at the train station in Bound Brook.  After reviewing photographs in an array provided by the one of the detectives, B.H. identified defendant as the person who shot Williams.

At the trial, however, B.H. testified he did not remember seeing the person who shot Williams.  He stated that he was not paying attention at the time and was intoxicated because he took certain drugs before the meeting.  He also stated he did not remember making a statement to the investigating officers.

The trial judge conducted a Rule 104 hearing, at which B.H. testified.  See N.J.R.E. 104.  The judge then ruled the State could admit B.H.'s prior statement to the police officers pursuant to the hearsay exception in Rule 803(a)(1) for prior inconsistent statements of a witness.  See N.J.R.E. 803(a)(1).  The judge determined that, regardless of whether B.H.'s failure to recall the details of the shootings was genuine and not due to a fear of retaliation, his trial testimony

15

was sufficiently inconsistent with his prior statement and could be admitted pursuant to Rule 803(8)(a)(1).

On appeal, defendant argues the trial judge's decision to permit the State to introduce B.H.'s prior statement was legally incorrect. He also argues the judge's decision deprived him of his constitutional right to confront B.H. about his earlier statement. He further argues his appellate attorney was ineffective because he did not name this issue on appeal. We disagree.

As the PCR court pointed out in its opinion, a witness's prior statement is admissible if the witness claims an inability to recall facts set forth in the earlier statement. See State v. Burns, 192 N.J. 312, 337-38 (2007) (prior statement may be admitted under Rule 803(a)(1) when witness testifies at trial that he did not recall making a prior statement or its contents); State v. Bryant, 217 N.J. Super. 72, 78 (App. Div. 1987) (holding that trial witness's prior statement may be admitted under Rule 803(a)(1) if the witness testified that he is unable to recall the prior statement).

Moreover, the PCR court correctly determined that defendant had not been denied his right to confront B.H. about his prior statement. The court noted that while B.H.'s claimed memory loss may have limited defendant's ability to cross-examine the witness, this did not rise to the level of a denial of the constitutional

A-5451-17T3

right to confront a witness. The court found that defendant had not shown that his ability to cross-examine B.H. had been adversely affected in any significant manner. The record supports that finding.

### 2. J.G.'s Statement.

After the shooting, the police officers took J.G. into custody and brought him to the SCPO. J.G. stated that earlier that evening, he attended a "[g]ang-related meeting" near the Bound Brook train station and witnessed a shooting. J.G. identified the shooter as a man he knew as "J."

J.G. stated that he did not know "J." personally but he had seen him at least three times before the shooting. He said "J." and Williams began to argue. According to J.G., "J." said something to the effect of "fuck this whatever," and then "[h]e just pulled it." J.G. said he saw "J." pull something from his pocket and he "just started shooting" at Williams.

At trial, however, J.G. testified that, on the night of the shooting, he was with a group of people behind the Bound Brook train station. He stated, however, that he did not recall anything about the shooting other than hearing gunshots. J.G. testified that he did not recall who fired the weapon or who was shot. He stated he had not been attending a gang meeting. He claimed he had been merely "walking by" the area.

The trial judge conducted a Rule 104 hearing, during which J.G. stated that, when he made his prior statement, he had been "traumatized" and "kind of like forced to say it." The judge commented that he did not believe J.G.'s prior statement or his trial testimony were credible.

The judge stated that he was hesitant to admit J.G.'s prior statement as substantive evidence, based on J.G.'s claim that the officers forced him to make the statement. The judge therefore allowed the State to admit the statement solely for the purpose of impeaching J.G.'s testimony.

However, after the officers testified and denied they had coerced J.G. to make his statement, the judge reconsidered his ruling. The judge then ruled that J.G.'s prior statement was "sufficiently reliable" to be admitted as substantive evidence as a prior inconsistent statement pursuant to Rule 803(a)(1). The judge instructed the jury accordingly.

On appeal, defendant argues that the trial judge erred by permitting J.G. to testify at trial. He contends J.G.'s trial testimony "was irrelevant pursuant to N.J.R.E. 401." He also argues that any "probative value" of their testimony was outweighed by its prejudicial effect and should have been excluded pursuant to Rule 403. N.J.R.E. 403. He contends his appellate attorney was ineffective because he did not name this issue on appeal. We disagree.

18

Here, the trial judge did not abuse his discretion by allowing J.G. to testify and admitting his prior statement into evidence pursuant to Rule 803(a)(1). J.G.'s trial testimony was relevant. He was an eyewitness to the shooting who previously stated he saw a person he knew as "J." shoot Williams. Moreover, the probative value of J.G.'s testimony and his prior statement substantially outweighed any risk of undue prejudice to defendant that could result from its admission.

B. <u>Self-Representation</u>.

Defendant further argues that his appellate attorney was ineffective because counsel did not argue on appeal that the trial judge erred by permitting defendant to waive his right to trial counsel and represent himself in the period leading up to the trial. He argues that the trial judge's decision caused "an irreversible detrimental effect on his ability to prepare a defense for trial." He contends he did not make a knowing or intelligent decision to waive his right to counsel. Again, we disagree.

Here, the trial judge fulfilled his duty to ensure that defendant waived his right to counsel 'knowingly and intelligently.'" <u>State v. King</u>, 210 N.J. 2, 18 (2012) (quoting <u>State v. Crisafi</u>, 128 N.J. 499, 509 (1992)). At the hearing held

on February 9, 2012, the judge conducted the inquiry and analysis required. See id., 210 N.J. at 17-20; Crisafi, 128 N.J. at 511-12.

Thus, there was no basis for appellate counsel to argue on appeal that the trial judge erred by allowing defendant to represent himself for a time before the trial. Moreover, during this period, defendant had the benefit of standby counsel, and he did not represent himself at trial. We are convinced appellate counsel was not deficient in failing to argue on appeal that defendant was prejudiced by the trial judge's ruling.

We therefore conclude that the PCR court did not err by finding that defendant failed to present a prima facie case of ineffective assistance of trial or appellate counsel. The PCR court also correctly found that defendant was not entitled to an evidentiary hearing on his petition.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5451-17T3